HAEGGQUIST & ECK, LLP
ALREEN HAEGGQUIST (221858)
  alreenh@haelaw.com
CLEMENCY CONDRY (805768)
  clemencyc@haelaw.com
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorneys for Plaintiff Brandie Goodson

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDIE GOODSON, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>PRESBYTERIAN HEALTHCARE SERVICES, a New Mexico Nonprofit Corporation.<br><br>Defendant. | Case No.: **'26 CV2199 GPC AHG**<br><br>COMPLAINT FOR DAMAGES AND OTHER RELIEF<br><br><br><br>DEMAND FOR JURY TRIAL |

HAEGGQUIST & ECK, LLP

Plaintiff Brandie Goodson ("Ms. Goodson" or "Plaintiff"), by her attorneys, brings this action on behalf of herself against Defendant Presbyterian Healthcare Services ("Presbyterian" or "Defendant"). Ms. Goodson makes the following allegations upon information and belief (except those allegations as to Ms. Goodson or her attorneys which are based on personal knowledge), based upon an investigation that is reasonable under the circumstances, which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

**NATURE OF THE ACTION**

1.     This case exposes the stark hypocrisy of Presbyterian, a healthcare organization whose stated mission is to "improve the health of the patients, members and communities we serve," yet abandoned one of its most devoted nurses when she needed medical support the most. After 13 years of exemplary service, Ms. Goodson, a dedicated After-Hours Triage Registered Nurse ("RN"), was wrongfully terminated while on an approved Medical Leave of Absence ("MLOA").

2.     Ms. Goodson sustained serious neck and back injuries in a car accident in 2009, resulting in chronic medical conditions that required ongoing treatment. Despite her condition, Ms. Goodson continued to provide exceptional patient care and consistently went above and beyond for Presbyterian, taking on multiple roles and responsibilities across departments as needed. When her condition worsened after multiple unsuccessful surgeries, Ms. Goodson requested reasonable accommodations—a permanent 36-hour schedule, as opposed to the 40-hour schedule she was working. Rather than engaging in any dialogue regarding her request, her manager, Shirley Cherino ("Ms. Cherino"), dismissed her request, stating it would "never happen." Ms. Goodson was then subjected to heightened scrutiny, held to overtime standards that were not applied consistently to others, required to perform work off-the-clock, and placed on unexplained administrative leave, culminating in her first disciplinary action in 13 years. The ultimate betrayal came in April 2025,

HAEGGQUIST & ECK, LLP

when Presbyterian wrongfully terminated Ms. Goodson while she was on an approved MLOA.

3.     To redress the harms suffered,  Ms. Goodson brings claims for: (1) Disability Discrimination in Violation of California Government Code §12940(a); (2) Failure to Provide Reasonable Accommodation for Disability in Violation of California Government Code §12940(m); (3) Retaliation for Requesting Reasonable Accommodations in Violation of California Government Code §12940(m)(2); (4) Failure to Engage in the Interactive Process in Violation of California Government Code §12940(n); (5) Failure to Prevent Discrimination and Retaliation in Violation of California Government Code §12940(k); (6) Retaliation and Wrongful Termination for Taking Medical Leave in Violation of 29 U.S.C. §2615(a); (7) Failure to Provide Meal Breaks or Pay Premium in Lieu Thereof in Violation of California Labor Code §§226.7 & 512 and IWC Wage Order No. 4-2001; (8) Failure to Provide Rest Breaks or Premium Pay in Lieu Thereof in Violation of California Labor Code §226.7 and IWC Wage Order No. 4-2001; (9) Failure to Pay Overtime Compensation in Violation of California Labor Code §§510 and 1194; (10) Failure to Reimburse Reasonable Business Expenses in Violation of California Labor Code §2802; (11) Failure to Timely Pay All Wages Due and Owing in Violation of California Labor Code §218; (12) Failure to Timely Pay Wages Due at Termination or Resignation in Violation of California Labor Code §§201, 202, and 203; and (13) Failure to Provide Accurate Wage Statements in Violation of California Labor Code §226.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action under 28 U.S.C. §1331 because this action arises under the laws of the United States, and under 28 U.S.C. §1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

5.     The Southern District of California has personal jurisdiction over the parties in this matter. Plaintiff is, and at all relevant times was, a citizen of San Diego,

COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

California. Defendant either has, or currently does, business within California, operates in California, and has a location in San Diego, California, where Plaintiff was employed. Defendant is either licensed to do, or does, business in California, has employees who reside in California, and promotes, sells, and markets services to customers throughout California. Finally, the acts and omissions which are outlined in this Complaint took place within the County of San Diego, State of California.

6. Venue is proper in this District under 28 U.S.C. §1391 because Plaintiff and Defendant are, and at all relevant times have been, subject to the personal jurisdiction of this Court, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

### Plaintiff

7. Brandie Goodson is a natural person, over 18 years old, residing in the County of San Diego, State of California. Ms. Goodson was an employee of Presbyterian from on or about November 5, 2012, until her wrongful termination on April 7, 2025. Ms. Goodson is, and at all relevant times was, a member of a protected class of persons within the meaning of the California Fair Employment and Housing Act, Government Code §§12940, *et seq*. ("FEHA"), due to her physical disability.

### Defendant

8. Upon information and belief, Presbyterian Healthcare Services operated during Plaintiff's employment in the State of California as a foreign corporation, with its principal place of business located at 9521 San Mateo Boulevard NE, Albuquerque, NM 87113. During the relevant period, Presbyterian was an "employer" under California Government Code §12926(d) and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2611(4)(A).

9. In doing the acts alleged herein, Presbyterian's employees, subcontractors, and agents acted within the course and scope of their employment and agency with Defendant. Defendant engaged in the acts alleged herein and/or

condoned, permitted, authorized, and/or ratified the conduct of its employees, subcontractors, and agents, and is vicariously liable for the wrongful conduct of its employees, subcontractors, and agents alleged herein.

## EXHAUSTION OF REMEDIES

10.     On April 3, 2026, Ms. Goodson filed a charge of discrimination with the California Civil Rights Department ("CRD") against Presbyterian. That same day, the CRD closed Ms. Goodson's case against Presbyterian and issued a Right-to-Sue letter. *See* Exhibit 1 attached hereto. Therefore, Ms. Goodson has exhausted her administrative remedies.

## FACTS COMMON TO ALL COUNTS

### *Ms. Goodson's Long and Exemplary Career with Presbyterian*

11.     Ms. Goodson was hired by Presbyterian in November 2012, as a pro re nata ("PRN") After-Hours Triage RN in the Customer Service Department,[1] to work remotely approximately 24 hours per week. As an After-Hours Triage RN, Ms. Goodson responded to patient calls outside of normal clinic hours, assessed patient concerns, offered clinical guidance, and determined whether a patient should seek urgent or emergency care.

12.     Throughout her tenure, Ms. Goodson demonstrated exceptional versatility and dedication by taking on several different remote roles as needed, including Inpatient Case Manager/ Intake Coordinator/ Nurse Liaison and eventually transitioning to a full-time After-Hours Triage RN in 2021. She consistently earned exceptional performance reviews and her value to Presbyterian was demonstrated by its decision to retain her through each one of her family relocations to Colorado in 2015, Texas in 2016, and finally California in 2021 by creating a special out-of-state remote arrangement, underscoring leadership's confidence in her expertise and dedication.

---

[1]     A PRN nurse works on an as-needed basis rather than a fixed schedule.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

*Ms. Goodson's Chronic Medical Conditions and Physical Disabilities*

13.    In 2009, Ms. Goodson was involved in a motor vehicle accident that caused significant and permanent injuries to her neck, back, and spine, including degenerative disc disease, spinal stenosis, bilateral sacroiliitis, fibromyalgia, arthritis, and a chronic pain disorder. Despite her disabilities, the only restriction Ms. Goodson had was a 20-pound lifting restriction, which was not an issue for her telephone-based patient assessment and clinical guidance role.

*Ms. Goodson Begins Reporting to Ms. Cherino*

14.    In early 2018, Ms. Cherino was hired as an RN supervisor and Ms. Goodson began reporting directly to her.

15.    Initially, Ms. Goodson had a positive, collaborative relationship with Ms. Cherino. Ms. Cherino frequently asked Ms. Goodson to assist in interviewing new nurse candidates, train newly hired nurses, and lead departmental improvement projects. Ms. Cherino also chose Ms. Goodson as one of two nurses to meet with the incoming Vice President to provide departmental orientation.

16.    Their relationship changed, however, when Ms. Goodson's condition worsened and she required a reduced work schedule as a reasonable accommodation for her disability.

*Ms. Goodson Takes FMLA Leave to Undergo Cervical Spine Surgery*

17.    In February 2020, Ms. Goodson took FMLA leave for her first cervical spine surgery. She returned to work in May 2020 following recovery without new restrictions, though her pain and neurological symptoms worsened post-operatively. This marked the beginning of a progressive deterioration in her condition despite surgical intervention.

*Ms. Goodson Relocates to California and Starts as a*
*Full-Time After-Hours Triage RN*

18.    In June 2021, Ms. Goodson relocated to California and transitioned to a full-time After-Hours Triage RN position, working overnight shifts Monday through

5

Friday, where she continued reporting to Ms. Cherino. This new role required her to use a Softphone application through the computer for all calls, which were recorded through the computer system. This setup required Ms. Goodson to sit for the entire duration of her shift, placing significant strain on her spine and worsening her chronic pain condition.

19.     In February 2023, Ms. Goodson and her colleague Rusty Bridges ("Mr. Bridges") proposed a "Job Share Plan," which was approved by upper management for the purpose of improving their work life balance. Under the arrangement, Ms. Goodson held the "40-hour position," consisting of two 15-hour shifts and one 10-hour shift, Monday through Wednesday, while Mr. Bridges held the "36-hour position," working two 15-hour shifts and one 6-hour shift, Wednesday through Friday. Both employees performed the same job duties, and their hour allocations were interchangeable so long as coverage was maintained.

### *Presbyterian Denies Ms. Goodson Reasonable Requests for Reasonable Accommodations*

20.     In March 2023, Ms. Goodson's department assumed triage responsibilities for the Presbyterian Oncology Department statewide, doubling her workload. As a result, Ms. Goodson routinely worked 15-hour shifts without breaks and was at times forced to mute her phone even to use the restroom.

21.     By August 2023, Ms. Goodson's condition had progressively worsened, requiring her to undergo another surgery. On August 31, 2023, Ms. Goodson took FMLA leave and Short-Term Disability for her second spinal surgery and subsequent recovery.

22.     Ms. Goodson returned to work on November 13, 2023, on a reduced 36-hour schedule as ordered by her surgeon. Immediately, Ms. Cherino displayed visible irritation about Ms. Goodson's health limitations and was openly frustrated about having to accommodate her medically necessary modified schedule.

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

23. Ms. Cherino's frustration with Ms. Goodson's disability and need for accommodation escalated dramatically during a scheduled meeting in December 2023 when Ms. Cherino screamed at Ms. Goodson over the phone, accusing her of having a negative attitude. The outburst was so intense and unprofessional that it reduced Ms. Goodson to tears. It was clear that Ms. Cherino's comment was a mischaracterization and, in fact, an expression of hostility toward Ms. Goodson's need to work reduced hours. The next morning, Ms. Cherino sent a text message apologizing for "raising her voice," but her pattern of hostility toward Ms. Goodson's disability and accommodation needs continued to escalate.

24. On May 1, 2024, when Ms. Goodson's medical restrictions expired and she returned to a 40-hour schedule, she noticed a rapid deterioration in her condition and realized she could not sustain the increased hours. Although only four additional hours, the extra time was physically taxing and pushed her body past its limits, tipping her health over the edge.

25. Ms. Goodson formally requested to permanently switch to the 36-hour position due to her serious medical condition, making multiple verbal and written requests to both Ms. Cherino and Director Dorothy Trout ("Director Trout"). Crucially, Mr. Bridges had already expressed his consent to the swap, creating a viable solution for both employees.

26. Despite her repeated requests, Ms. Goodson received neither approval nor denial from either manager. Ms. Goodson even offered to move to part-time, but was told that no part-time positions existed. Ms. Goodson was never asked to provide a doctor's note supporting her need for a reduced schedule; had one been requested, she would have submitted one promptly. Instead, her requests were repeatedly dismissed and denied.

27. Months later, after repeated verbal and written requests, Ms. Cherino bluntly told Ms. Goodson to get it "out of [her] head," stating that the reduction in her hours was never going to happen.

7
COMPLAINT FOR DAMAGES AND OTHER RELIEF

### *Ms. Cherino Retaliates Against Ms. Goodson for Requesting Reasonable Accommodations*

28.    From this point, Ms. Cherino's micromanagement of Ms. Goodson's work intensified dramatically, including closely monitoring her tasks, frequently criticizing her performance in writing and in meetings, and scrutinizing routine aspects of her work far beyond normal managerial practices. Ms. Cherino increased the number of one-on-one meetings with Ms. Goodson from quarterly to weekly, primarily scheduling them on Ms. Goodson's off-days. She also implemented a strict no-overtime policy and was furious if Ms. Goodson recorded any overtime. When Ms. Cherino scheduled their one-on-one meetings during Ms. Goodson's off-hours, she instructed Ms. Goodson to "shave time" elsewhere to avoid recording overtime. Given the critical nature of patient triage, however, it was often impossible for Ms. Goodson to leave early or take extended breaks to offset these meeting hours, forcing her to work off-the-clock to complete her patient care responsibilities.

29.    Ms. Goodson later discovered that this strict no-overtime policy was selectively and discriminatorily applied—Mr. Bridges routinely worked overtime without any objection from Ms. Cherino.

30.    On July 12, 2024, Presbyterian's Medical Leave Team notified Ms. Goodson, copying Ms. Cherino, that she had almost exhausted her FMLA hours. Ms. Cherino's tone briefly improved. However, when Ms. Goodson informed Ms. Cherino that her FMLA would renew at the end of August, Ms. Cherino's demeanor again deteriorated, clearly reflecting hostility toward Ms. Goodson's disability and her need to utilize protected medical leave.

31.    Between August and November 2024, Ms. Goodson took intermittent FMLA leave for several preplanned pain management procedures, amounting to just 11 days in total. Although all procedures were approved in advance and Ms. Cherino was copied on all related communications, she repeatedly called and texted Ms. Goodson directly about FMLA approval. On multiple occasions, Ms. Cherino falsely

COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

claimed she could not approve Ms. Goodson's "PTO" requests, mischaracterizing her FMLA-protected medical leave as regular time off.

### Ms. Goodson Receives Her First-Ever Disciplinary Write-Up Two Days After Requesting FMLA Leave

32. On November 25, 2024, Ms. Goodson informed Ms. Cherino of her two upcoming surgeries, scheduled for December 4 and December 18, 2024, and her need to take FMLA leave.

33. Just two days later, on November 27, 2024—the day before Thanksgiving—Ms. Cherino abruptly placed Ms. Goodson on a forced administrative leave pending investigation of a complaint allegedly made against her. Ms. Goodson was not informed of the complaint against her or the reason for the leave and was forced to spend her Thanksgiving holiday worried, confused, and humiliated, wondering what she could have possibly done to warrant investigation. During this period, she also underwent the first of two scheduled surgical procedures, adding to her stress. The administrative leave continued through December 11, 2024, lasting nearly two weeks.

34. The administrative leave was triggered by a complaint alleging that Ms. Goodson mishandled a routine after-hours lab call on November 25, 2024—an allegation that was later proved incorrect, as Ms. Goodson acted in accordance with established processes. Despite this, Ms. Cherino used the complaint as pretext to impose immediate and disproportionate disciplinary measures, including placing Ms. Goodson on a two-week administrative leave and issuing her first write-up in 13 years, based on an incorrect accusation, that remained in her personnel file.

### Ms. Goodson's Condition Deteriorates and She Requires Immediate Medical Leave

35. In December 2024, Ms. Goodson underwent two surgical procedures two weeks apart. Her surgeon instructed her to take one week off after each procedure. Following the second procedure on December 20, 2024, she only took two days off

COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

to avoid further scrutiny from Ms. Cherino. Her pain worsened significantly, and she was often forced to work lying on her side.

36.    On January 9, 2025, during a 2:00 a.m. triage shift, Ms. Goodson's pain became unbearable. For the first time in this position, she asked a field nurse to handle the call as she was unable to complete it herself. The following morning, Ms. Goodson contacted her primary care physician, who recommended immediate medical leave. Her doctor placed Ms. Goodson on FMLA leave for treatment and recovery, which was promptly approved.

***Presbyterian Terminates Ms. Goodson While She Is on Approved Medical Leave***

37.    On February 17, 2025, Ms. Goodson exhausted her twelve weeks of FMLA and transitioned to a MLOA under the Americans with Disability Act ("ADA") and the FEHA as a reasonable accommodation through April 7, 2025.

38.    On April 1, 2025, Ms. Goodson submitted updated medical certification from her doctor requesting an extension.

39.    On April 8, 2025, Ms. Goodson received a voicemail and email confirming her MLOA extension through May 15, 2025, on which Ms. Cherino was copied. The medical leave team reassured Ms. Goodson that further extensions were under review.

40.    Over a month later, Ms. Goodson received a COBRA notice, at which point she realized she had been terminated without any prior notice or formal communication, despite being on approved medical leave under the ADA and FEHA.

41.    On May 29, 2025, Ms. Goodson received a formal letter from Ms. Cherino stating her employment ended on ***April 7, 2025***, because she "did not return to work," even though her MLOA had been approved through ***May 15, 2025***, and Ms. Cherino received an email informing her of the same. This action was part of a broader pattern of discrimination and retaliation directed at Ms. Goodson because of her disabilities, culminating in her wrongful termination while she was on approved medical leave.

42.    As a direct result of Presbyterian's conduct, Ms. Goodson has suffered, and continues to suffer, lost wages and benefits, humiliation, embarrassment, emotional distress, and mental anguish. Ms. Goodson is a victim of Presbyterian's unlawful practices and therefore brings this action to recover damages.

## COUNT I

### Disability Discrimination
### In Violation of California Government Code §12940(a)

43.    Ms. Goodson hereby realleges and incorporates by reference the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

44.    Under FEHA, "[i]t is an unlawful employment practice . . . [f]or an employer, because of the . . . physical disability . . . of any person . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code §12940(a). "Physical disability" means "[h]aving any physiological disease, disorder, [or] condition . . . that . . . [a]ffects one or more . . . body systems" and "[l]imits a major life activity." Cal. Gov't Code §12926(m)(1). "'Major life activities' shall be broadly construed and includes physical, mental, and social activities and working." Cal. Gov't Code §12926(m)(1)(B)(iii).

45.    At all relevant times mentioned herein, Presbyterian was an employer and Ms. Goodson was Presbyterian's employee.

46.    At all relevant times mentioned herein, Ms. Goodson was in a class of persons protected by California Government Code §12940 because of her physical disabilities and Presbyterian was aware of Ms. Goodson's physical disabilities.

47.    Despite her physical disabilities, Ms. Goodson was able to perform essential job duties, at times with and at times without reasonable accommodations.

48.    As set forth herein, and in violation of Government Code §12940(a), Presbyterian discriminated against Ms. Goodson because of physical disabilities.

11
COMPLAINT FOR DAMAGES AND OTHER RELIEF

Among other adverse employment actions, Presbyterian ignored her request to engage in the interactive process, denied her request for reasonable accommodations, subjected her to excessive supervision, scrutiny, and unfounded disciplinary action, placed her on an unjustified and disproportionate two-week administrative leave, and wrongfully terminated her employment.

49.    As a proximate result of Presbyterian's wrongful conduct, Ms. Goodson has suffered, and continues to suffer, substantial losses in earnings, earning capacity, and other benefits of employment, all in an amount to be determined according to proof at the time of trial. Ms. Goodson will also suffer tax consequences due to Presbyterian's failure to pay Ms. Goodson money owed, which will come due in a lump sum in the future. Accordingly, Ms. Goodson is entitled to an additional amount of damages to offset the tax consequences of a lump sum award for lost earnings, plus interest.

50.    As a further proximate result of Presbyterian's wrongful conduct, Ms. Goodson has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

51.    In performing the acts alleged, which were committed, authorized, and/or adopted and approved by Presbyterian's officers, directors, or managing agents,  acted with oppression, fraud, malice, and with conscious disregard for the rights of  Ms. Goodson, and  Ms. Goodson is therefore entitled to punitive damages against Presbyterian in an amount appropriate to punish and make an example of Presbyterian.

52.    Ms. Goodson is also entitled to attorneys' fees and costs pursuant to Government Code §12965(c)(6), because of Presbyterian's wrongful conduct.

HAEGGQUIST & ECK, LLP

12
COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

## COUNT II

### Failure to Provide Reasonable Accommodation for Disability
### In Violation of California Government Code §12940(m)

53. Ms. Goodson realleges and incorporates here by reference each and every allegation in the preceding and subsequent paragraphs, as if fully set forth herein.

54. California Government Code §12940(m) makes it unlawful "[f]or an employer . . . to fail to make reasonable accommodation for the known physical . . . disability of an applicant or employee." Cal. Gov't Code §12940(m). California Government Code §12926 defines "physical disability" to include "[b]eing regarded or treated by the employer . . . as having . . . any physical condition that makes achievement of a major life activity difficult." Cal. Gov't Code §12926(m)(4); *see also Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 53 (2006). "'Major life activities' shall be broadly construed and includes physical, mental, and social activities and working." Cal. Gov't Code §12926(m)(1)(B)(iii). Thus, employers must reasonably accommodate those individuals "regarded as" disabled. *Gelfo*, 140 Cal. App. 4th at 60-61.

55. The affirmative duties to engage in the interactive process and accommodate are "'continuing'" and they are "'not exhausted by one effort.'" *Swanson v. Morongo Unified Sch. Dist.*, 232 Cal. App. 4th 954, 969 (2014) (citation omitted). "'The term "reasonable accommodation" is to be interpreted flexibly.'" *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 948 (1997) (citation omitted). The law provides a "non-exhaustive" list of accommodations, including job restructuring, transfer, part-time and modified work schedules, and extended leaves of absence, among many others. *Id.* at 948; Cal. Gov't Code §12926(p); 2 Cal. Code Regs. §§11065(p)(2), 11068(c).

COMPLAINT FOR DAMAGES AND OTHER RELIEF

56.    At all relevant times mentioned herein, Ms. Goodson was in a class of persons protected by Government Code §12940(m) because of her physical disabilities. At all relevant times mentioned herein, Presbyterian was aware of Ms. Goodson's physical disabilities.

57.    Between November 2023 and early 2024, Ms. Goodson worked a reduced 36-hour work schedule under her doctor's orders, demonstrating that such an accommodation could be implemented by Presbyterian without undue hardship. In addition, under Presbyterian's approved job-share arrangement, the 36-hour and 40-hour positions were interchangeable. At the time Ms. Goodson requested a permanent reduced schedule, Mr. Bridges—who then held the 36-hour position—expressly agreed to exchange schedules with her. Despite the feasibility of the requested accommodation, Ms. Cherino denied Ms. Goodson's request to permanently transition to a 36-hour schedule. Instead, Presbyterian wrongfully terminated Ms. Goodson's employment while she was on approved medical leave.

58.    By failing to provide Ms. Goodson with a reasonable accommodation, which it could have done without undue hardship, Presbyterian violated Government Code §12940(m).

59.    As a proximate result of Presbyterian's wrongful conduct, Ms. Goodson has suffered, and continues to suffer, substantial losses in earnings, earning capacity, and other benefits of employment, all in an amount to be determined according to proof at the time of trial. Ms. Goodson will also suffer tax consequences due to Presbyterian's failure to pay Ms. Goodson money owed, which will come due in a lump sum in the future. Accordingly, Ms. Goodson is entitled to an additional amount of damages to offset the tax consequences of a lump sum award for lost earnings, plus interest.

60.    As a further proximate result of Presbyterian's wrongful conduct, Ms. Goodson has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, loss of professional identity, depression, anxiety, and

HAEGGQUIST & ECK, LLP

14
COMPLAINT FOR DAMAGES AND OTHER RELIEF

psychological harm requiring medical treatment, all in an amount to be determined according to proof at the time of trial.

61. In performing the acts alleged, which were committed, authorized, and/or adopted and approved by Presbyterian's officers, directors, or managing agents, acted with oppression, fraud, malice, and with conscious disregard for the rights of Ms. Goodson, and Ms. Goodson is therefore entitled to punitive damages against in an amount appropriate to punish and make an example of Presbyterian.

62. Ms. Goodson is also entitled to attorneys' fees and costs pursuant to Government Code §12965(c)(6), because of Ms. Goodson's wrongful conduct.

## COUNT III

### Retaliation for Requesting Reasonable Accommodations
### In Violation of California Government Code §12940(m)(2)

63. Ms. Goodson hereby realleges and incorporates by reference the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

64. Under the FEHA, "[i]t is an unlawful employment practice . . . [f]or an employer . . . [to] retaliate or otherwise discriminate against a person for requesting accommodation under [California Government Code §12940(m)(1)], regardless of whether the request was granted." Cal. Gov't Code §12940(m)(2). Employers must "make reasonable accommodation for the known physical . . . disability of an . . . employee." Cal. Gov't Code §12940(m)(1). A reasonable accommodation includes a paid or unpaid leave of absence "[w]hen the employee cannot presently perform the essential functions of the job, or otherwise needs time away from the job for treatment and recovery." 2 Cal. Code Regs. §§11068(c), 11065(p)(2)(M).

65. "Physical disability" means "[h]aving any physiological disease, disorder, [or] condition . . . that . . . [a]ffects one or more . . . body systems" and "[l]imits a major life activity." Cal. Gov't Code §12926(m)(1) (2024). "'Major life

HAEGGQUIST & ECK, LLP

activities' shall be broadly construed and includes physical, mental, and social activities and working." Cal. Gov't Code §12926(m)(1)(B)(iii).

66. At all relevant times mentioned herein, Presbyterian was an employer pursuant to Government Code §12926(d) and Ms. Goodson was Presbyterian's employee.

67. At all relevant times mentioned herein, Ms. Goodson was in a class of persons protected by Government Code §12940 because of her physical disabilities and Presbyterian was aware of Ms. Goodson's physical disabilities.

68. Despite her physical disabilities, Ms. Goodson was able to perform her essential job duties, at times with and at times without reasonable accommodations.

69. As alleged herein, Presbyterian engaged in protected activity by requesting reasonable accommodations, including a reduced work schedule, intermittent medical leave, and additional leave after the alleged exhaustion of her FMLA leave due to her physical disabilities. Instead of accommodating Ms. Goodson, Presbyterian retaliated against her. Among other adverse employment actions, Presbyterian ignored her request to engage in the interactive process, denied her request for reasonable accommodations, subjected her to excessive supervision, scrutiny, and unfounded disciplinary action, placed her on an unjustified and disproportionate two-week administrative leave, and wrongfully terminated her employment. As such, Presbyterian violated Government Code §12940(m)(2).

70. As a proximate result of Presbyterian's wrongful conduct, Ms. Goodson has suffered, and continues to suffer, substantial losses in earnings, earning capacity, and other benefits of employment, all in an amount to be determined according to proof at the time of trial. Ms. Goodson will also suffer tax consequences due to Presbyterian's failure to pay Ms. Goodson money owed, which will come due in a lump sum in the future. Accordingly, Ms. Goodson is entitled to an additional amount of damages to offset the tax consequences of a lump sum award for lost earnings, plus interest.

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DAMAGES AND OTHER RELIEF

71.     As a further proximate result of Presbyterian's wrongful conduct, Ms. Goodson has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

72.     In performing the acts alleged, which were committed, authorized, and/or adopted and approved by Presbyterian's officers, directors, or managing agents, Presbyterian acted with oppression, fraud, malice, and with conscious disregard for the rights of Ms. Goodson, and Ms. Goodson is therefore entitled to punitive damages against  in an amount appropriate to punish and make an example of Presbyterian.

73.     Ms. Goodson is also entitled to attorneys' fees and costs pursuant to Government Code §12965(c)(6), because of Presbyterian's wrongful conduct.

## COUNT IV

### Failure to Engage in the Interactive Process
### In Violation of California Government Code §12940(n)

74.     Ms. Goodson realleges and incorporates here by reference each and every allegation in the preceding and subsequent paragraphs.

75.     The FEHA makes it unlawful "[f]or an employer . . . to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical . . . disability." Cal. Gov't Code §12940(n). Government Code §12926 defines "physical disability" to include "[b]eing regarded or treated by the employer . . . as having . . . any physical condition that makes achievement of a major life activity difficult." Cal. Gov't Code §12926(m)(4); *see also Gelfo*, 140 Cal. App. 4th at 53. "'Major life activities' shall be broadly construed and includes physical, mental, and social activities and working." Cal. Gov't Code §12926(m)(1)(B)(iii). Thus, employers must engage in an informal, interactive process to determine any effective accommodations for those

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

individuals "regarded as" disabled. *Gelfo*, 140 Cal. App. 4th at 61-62. And the affirmative duty to engage in the interactive process is "'continuing'" and is "'not exhausted by one effort.'" *Swanson*, 232 Cal. App. 4th at 969 (citation omitted).

76.    A good faith, interactive process requires that "[t]he employer . . . either grant the . . . employee's requested accommodation, or reject it after due consideration, and initiate discussion with the . . . employee regarding alternative accommodations." 2 Cal. Code Regs. §11069(c)(1). The "goal" of the interactive process is to "'identify[] an accommodation that allows the employee to perform the job effectively,'" and the burden is on the employer. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 261 (2000) (citation omitted).

77.    At all times mentioned herein, Ms. Goodson was in a class of persons protected by Government Code §12940 because of her disability and/or perceived disability, and Presbyterian was aware of Ms. Goodson's disability and/or perceived her as having a physical disability.

78.    Ms. Goodson reported her disability to Presbyterian on multiple occasions, including through her surgeon's orders for a modified work schedule. Presbyterian, however, failed to engage in the interactive process with Ms. Goodson, and instead of reasonably accommodating her disability, it dismissed and denied Ms. Goodson's requests and unlawfully terminated her employment.

79.    By failing to engage in a timely, good faith, interactive process with Ms. Goodson, Presbyterian violated Government Code §12940(n).

80.    As a proximate result of Presbyterian's wrongful conduct, Ms. Goodson has suffered, and continues to suffer, substantial losses in earnings, earning capacity, and other benefits of employment, all in an amount to be determined according to proof at the time of trial. Ms. Goodson will also suffer tax consequences due to Presbyterian's failure to pay Ms. Goodson money owed, which will come due in a lump sum in the future. Accordingly, Ms. Goodson is entitled to an additional amount

of damages to offset the tax consequences of a lump sum award for lost earnings, plus interest.

81. As a further proximate result of Presbyterian's wrongful conduct, Ms. Goodson has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

82. In performing the acts alleged, which were committed, authorized, and/or adopted and approved by Presbyterian's officers, directors, or managing agents, Presbyterian acted with oppression, fraud, malice, and with conscious disregard for the rights of Ms. Goodson, and Ms. Goodson is therefore entitled to punitive damages against Presbyterian in an amount appropriate to punish and make an example of Presbyterian.

83. Ms. Goodson is also entitled to attorneys' fees and costs pursuant to Government Code §12965(c)(6), because of Presbyterian's wrongful conduct.

### COUNT V

**Failure to Prevent Discrimination and Retaliation
In Violation of California Government Code §12940(k)**

84. Ms. Goodson realleges and incorporates here by reference each and every allegation in the preceding and subsequent paragraphs.

85. The FEHA makes it unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code §12940(k). "[R]etaliation is a form of discrimination actionable under [Government Code] section 12940, subdivision (k)." *Taylor v. City of L.A. Dep't of Water & Power*, 144 Cal. App. 4th 1216, 1239 (2006) (disapproved on other grounds in *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1173-74 (2008)).

86. At all times mentioned herein, Presbyterian was aware of the discriminatory and retaliatory conduct toward Ms. Goodson and failed to take

COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

reasonable steps to prevent such conduct from occurring. Thus, Presbyterian violated Government Code §12940(k).

87.   As a proximate result of Presbyterian's wrongful conduct, Ms. Goodson has suffered, and continues to suffer, substantial losses in earnings, earning capacity, and other benefits of employment, all in an amount to be determined according to proof at the time of trial. Ms. Goodson will also suffer tax consequences due to Presbyterian's failure to pay Ms. Goodson money owed, which will come due in a lump sum in the future. Accordingly, Ms. Goodson is entitled to an additional amount of damages to offset the tax consequences of a lump sum award for lost earnings, plus interest.

88.   As a further proximate result of Presbyterian's wrongful conduct, Ms. Goodson has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

89.   In performing the acts alleged, which were committed, authorized, and/or adopted and approved by Presbyterian's officers, directors, or managing agents, Presbyterian acted with oppression, fraud, malice, and with conscious disregard for the rights of Ms. Goodson, and Ms. Goodson is therefore entitled to punitive damages against Presbyterian in an amount appropriate to punish and make an example of Presbyterian.

90.   Ms. Goodson is also entitled to attorneys' fees and costs pursuant to Government Code §12965(c)(6), because of Presbyterian's wrongful conduct.

## COUNT VI

### Retaliation and Wrongful Termination for Taking Medical Leave
### In Violation of 29 U.S.C. §2615(a)

91.   Ms. Goodson hereby realleges and incorporates by reference the allegations contained in the preceding and subsequent paragraphs, as if fully set forth herein.

HAEGGQUIST & ECK, LLP

20
COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

92. The FMLA prohibits covered employers from interfering with, restraining, or denying employees' exercise of or attempt to exercise the right to take medical leave. 29 U.S.C. §2615(a)(1); 29 C.F.R. §825.220(a)(1). Further, the "prohibition against interference prohibits an employer from discriminating or retaliating against an employee . . . for having exercised . . . FMLA rights." 29 C.F.R. §825.220(c). For example, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies." *Id*; *Liu v. Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003) ("where an employee is subjected to 'negative consequences . . . simply because he has used FMLA leave,' the employer has interfered with the employee's FMLA rights") (citation omitted). Any violations of the FMLA or of the accompanying regulations "constitute interfering with, restraining, or denying the exercise of rights provided by the [FMLA]." 29 C.F.R. §825.220(b).

93. At all times relevant hereto, Presbyterian was an "employer" subject to the FMLA because Presbyterian was engaged in commerce and employed 50 or more employees for each working day of the 20 workweeks just prior to Ms. Goodson taking FMLA leave. 29 U.S.C. §2611(4)(i).

94. At all times relevant hereto, Ms. Goodson was an "eligible employee" covered by the FMLA because Ms. Goodson was employed by Presbyterian for at least 1,250 hours during the 12-month period just prior to taking leave and worked at a worksite where Presbyterian employed more than 50 employees within 75 miles. 29 U.S.C. §2611(2).

95. As an eligible employee, Ms. Goodson was entitled to 12 work weeks of leave to care for a serious health condition which made her unable to perform the functions of her job. 29 U.S.C. §2612(a)(1)(D). The FMLA defines a "serious health condition" to include a "mental condition that involves . . . (B) continuing treatment by a health care provider." 29 U.S.C. §2611(11)(B).

21

COMPLAINT FOR DAMAGES AND OTHER RELIEF

96.     At all times relevant hereto, Ms. Goodson suffered from a serious health condition as defined by the FMLA – including degenerative disc disease, spinal stenosis (cervical and lumbar), ankylosing spondylitis with bilateral sacroiliitis, chronic pain syndrome, and post-laminectomy syndrome– that involved continuing treatment by her health care providers.

97.     As alleged herein, Ms. Goodson required, requested, and/or intermittently took protected FMLA leave due to her serious health conditions. Thereafter, Presbyterian retaliated against Ms. Goodson for doing so. Among other adverse employment actions, Presbyterian ignored her request to engage in the interactive process, denied her request for reasonable accommodations, subjected her to excessive supervision, scrutiny, and unfounded disciplinary action, placed her on an unjustified and disproportionate two-week administrative leave, and wrongfully terminated her employment. Ms. Goodson's request for and use of FMLA leave was a substantial motivating reason in Presbyterian's decision to terminate Ms. Goodson.

98.     As a proximate result of Presbyterian's wrongful conduct, Ms. Goodson has suffered, and continues to suffer, substantial losses in wages, salary, employment benefits, and other compensation, and has suffered other actual monetary loses, all in an amount to be determined according to proof at the time of trial, plus interest thereon. 29 U.S.C. §2617(a)(1)(A)(i), (ii).

99.     Ms. Goodson is also entitled to liquidated damages equal to her lost wages, salary, employment benefits, and other compensation, and other actual monetary loses, plus interest thereon as a result of Presbyterian's violation of the FMLA. 29 U.S.C. §2617(a)(1)(A)(iii).

100.   Ms. Goodson is also entitled to attorneys' fees, expert witness fees, and others costs pursuant to 29 U.S.C. §2617(a)(3).

22
COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

## COUNT VII

### Failure to Provide Meal Breaks or Pay
### Premium in Lieu Thereof
### In Violation of California Labor Code §§226.7 & 512
### and IWC Wage Order No. 4-2001

101. Ms. Goodson realleges and incorporates here by reference each allegation in the preceding and subsequent paragraphs.

102. Ms. Goodson did not meet the criteria established for exemption as an executive or administrative employee, and therefore, Ms. Goodson was a non-exempt employee entitled to the protections of California Labor Code §§226.7 and 512 throughout her employment with Defendant.

103. Labor Code §512(a) provides that "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code §512(a). California's accompanying Regulations further provide:

> No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

8 Cal. Code Regs. §11040(11)(A); IWC Wage Order No. 4-2001(11)(A).

104. Further, an "employer shall not require an employee to work during a meal . . . period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission." Cal. Lab. Code §226.7(b). "If an employer fails to provide an employee a meal . . . period . . . , the employer shall pay the employee one additional hour of pay at the employee's regular rate of

23

COMPLAINT FOR DAMAGES AND OTHER RELIEF

compensation for each workday that the meal . . . period is not provided." Cal. Lab. Code §226.7(c); 8 Cal. Code Regs. §11040(11)(B); IWC Wage Order No. 4-2001(11)(B).

105.   During the relevant period, Ms. Goodson did not receive compliant meal breaks for working more than five and/or ten hours per day. Presbyterian knowingly failed to provide Ms. Goodson with the ability to take duty-free meal breaks. Ms. Goodson was not relieved of all duties during her meal breaks, if any.

106.   Further, during the relevant period, Presbyterian failed to pay Ms. Goodson one additional hour of pay at her regular rate of compensation for each workday that a meal break was missed, late, and/or interrupted pursuant to Labor Code §226.7(c) and IWC Wage Order 4-2001(11).

107.   As a result of Presbyterian's failure to provide Ms. Goodson with duty-free meal breaks and its failure to pay Ms. Goodson one additional hour of pay at her regular rate of compensation for each workday that a meal break was missed, late, and/or interrupted, Ms. Goodson suffered and continues to suffer a loss of wages and compensation.

108.   As a result of the Presbyterian's unlawful acts, Ms. Goodson is entitled to recover her attorneys' fees and costs, and interest in amounts to be proven at the time of trial. *See* Cal. Lab. Code §§218.5 and 218.6.

### COUNT VIII

**Failure to Provide Rest Breaks or Premium Pay in Lieu
Thereof in Violation of California Labor Code §226.7
and IWC Wage Order No. 4-2001**

109.   Ms. Goodson realleges and incorporates here by reference each and every allegation in the preceding and subsequent paragraphs.

110.   Employees are entitled "to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per

HAEGGQUIST & ECK, LLP

24

COMPLAINT FOR DAMAGES AND OTHER RELIEF

four (4) hours or major fraction thereof." 8 Cal. Code Regs. §11040(12)(A); IWC Wage Order No. 7-2001(12)(A).

111. "An employer shall not require an employee to work during a . . . rest . . . period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission . . . ." Cal. Lab. Code §226.7(b). "If an employer fails to provide an employee a . . . rest . . . period . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the . . . rest . . . period is not provided." Cal. Lab. Code §226.7(c); 8 Cal. Code Regs. §11040(12)(B); IWC Wage Order No. 4-2001(12)(B).

112. During the relevant period, Presbyterian did not provide Ms. Goodson with the opportunity to take a duty-free, ten-minute rest period for every four hours or major fraction thereof that she worked. Presbyterian failed to pay Ms. Goodson one additional hour of pay at her regular rate of compensation for each workday that a rest period was missed, late, and/or interrupted pursuant to Labor Code §226.7(b) and IWC Wage Order 4-2001(12).

113. As a result of Presbyterian's failure to provide Ms. Goodson with duty-free rest periods and its failure to pay Ms. Goodson one additional hour of pay at her regular rate of compensation for each workday that a rest period was missed, late, and/or interrupted, Ms. Goodson suffered and continues to suffer a loss of wages and compensation.

114. As a result of the Presbyterian's unlawful acts, Ms. Goodson is entitled to recover her attorneys' fees and costs, and interest in amounts to be proven at the time of trial. *See* Cal. Lab. Code §§218.5 and 218.6.

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

## COUNT IX

### Failure to Pay Overtime Compensation
### In Violation of Labor Code §§510 and 1194

115.   Ms. Goodson hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

116.   Employees must be paid one and one-half of their regular wages for every hour worked above forty hours in a given work week, or above eight hours in a given workday. *See* 8 Cal. Code Regs. §11040(3). "[A]ny employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab. Code § 1194(a); *see also* Cal. Lab. Code §§218, 218.5, 218.6.

117.   Labor Code §510(a) provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

Cal. Lab. Code §510(a); *see also* 8 Cal. Code Regs. §11050(3)(A)(1).

118.   Ms. Goodson did not work alternative workweek schedules pursuant to Labor Code §§511, 514, or 554.

119.   Ms. Goodson worked more than eight hours in a workday and/or in excess of 40 hours in a workweek without being compensated at the applicable overtime rate. In addition, Ms. Goodson worked in excess of 12 hours in one day without being compensated at the applicable overtime rate. Presbyterian failed to pay Ms. Goodson's overtime wages.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

120.   As such, Presbyterian must pay Ms. Goodson all unpaid overtime wages, interest, costs of suit, and reasonable attorneys' fees. Cal. Lab. Code §§218, 218.5, 218.6.

## COUNT X

### Failure to Reimburse Reasonable Business Expenses
### In Violation of California Labor Code §2802

121.   Ms. Goodson hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

122.   "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Cal. Lab. Code §2802(a). The purpose of the statute is "'to prevent employers from passing their operating expenses on to their employees.'" *Cochran v. Schwan's Home Serv., Inc.*, 228 Cal. App. 4th 1137, 1144 (2014) (citations omitted); *id.* at 1145 (holding to "show liability under section 2802, an employee need only show that he or she was required" to incur a business-related expense and "not reimbursed").

123.   "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee . . . of any right or remedy to which he is entitled under the laws of this State." Cal. Lab. Code §2804; *see also Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 951 (2008) (holding Labor Code §2804 applies to Labor Code §2802, "making all contracts that waive an employee's right to indemnification null and void"); *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1123 (S.D. Cal. 2006) (holding Labor Code §2804 precluded employer from arguing the deductions it made in violation of Labor Code §2802 were "contractually agreed upon with the Plaintiff").

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DAMAGES AND OTHER RELIEF

124. Ms. Goodson incurred necessary expenditures in direct consequence of the discharge of her employment duties and her obedience to Presbyterian's directions including, but not limited to service and usage of Ms. Goodson's home internet.

125. Presbyterian did not provide Ms. Goodson with home internet and forced Ms. Goodson to pay out of pocket for her reasonable and necessary business expenses Presbyterian did not reimburse Ms. Goodson for these reasonable and necessary business expenses.

126. As a result of the Presbyterian's unlawful acts, Ms. Goodson is entitled to recover her unreimbursed expenditures, interest, and attorneys' fees and costs, in amounts to be proven at the time of trial. Cal. Lab. Code §2802(b), (c).

## COUNT XI

### Failure to Timely Pay All Wages Due and Owing
### In Violation of California Labor Code §218

127. Ms. Goodson hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

128. California Labor Code §218 provides for a private right of action for "any wage claimant to sue directly or through an assignee for any wages or penalty due him" under the provisions of Article 1 (§§200-244) of the Labor Code. Cal. Lab. Code §218.

129. "Wages" are defined as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Lab. Code §200(a). The California Supreme Court construes the term wages broadly to "'include not only the periodic monetary earnings of the employee but also the other benefits to which he is entitled as a part of his compensation,'" e.g., money, room and board, clothing, vacation and sick pay, and insurance. *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 618 (2009) (citation omitted).

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DAMAGES AND OTHER RELIEF

130.    Due to Presbyterian's failure to lawfully compensate Ms. Goodson for her overtime hours worked, as detailed above, Presbyterian denied Ms. Goodson wages that were due and owing.

131.    As a direct and proximate result of Presbyterian's unlawful conduct, Ms. Goodson suffered damages in an amount to be proven at the time of trial. Goodson may also recover penalties, costs, reasonable attorneys' fees, and prejudgment interest.

## COUNT XII

### Failure to Timely Pay Wages Due at Termination or Resignation in Violation of California Labor Code §§201, 202, and 203

132.    Ms. Goodson realleges and incorporates herein by reference each and every allegation in the preceding and subsequent paragraphs.

133.    California Labor Code §201 provides in pertinent part: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code §201(a). "Wages" include accrued vacation pay. *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 779 (1982). A proportionate right to a paid vacation "vests" as the labor is rendered. *Id.* Once vested, the right is protected from forfeiture by Labor Code §227.3. *Id.*

134.    Labor Code §202(a) states:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of the mailing shall constitute the date of payment for purposes of the requirement to provide payment within 72 hours of the notice of quitting.

Cal. Lab. Code §202(a).

COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

135.   Presbyterian willfully failed to timely pay Ms. Goodson all of her wages due for work performed, and this failure continued through the time in which Ms. Goodson was discharged from her employment with Presbyterian. As a result, Presbyterian violated Labor Code §§201 and 202.

136.   Labor Code §203 provides in pertinent part: "If an employer willfully fails to pay . . . in accordance with Sections 201 [and] 202 . . . , any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid . . . ; but the wages shall not continue for more than 30 days." Cal. Lab. Code §203(a) (emphasis added).

137.   Presbyterian violated California Labor Code §§201 and 202 by failing to pay Ms. Goodson who was involuntarily terminated, or was otherwise discharged, all of her wages due pursuant to the timelines provided in these sections.  Presbyterian willfully failed to pay all wages due as the failure to pay was not inadvertent or accidental.

138.   Ms. Goodson is entitled to compensation for all forms of wages earned, but to date has not received such compensation therefore entitling her to penalties under Labor Code §203.

139.   More than 30 days have passed since Ms. Goodson left Presbyterian's employ, and she has not received payment pursuant to Labor Code §§201, 202, and 203. Because of Presbyterian's willful conduct in not paying all earned wages,  Ms. Goodson is entitled to 30 days' wages as a premium wage or penalty under Labor Code §203.

## COUNT XIII

### Failure to Provide Accurate Wage Statements
### In Violation of California Labor Code §226

140.   Ms. Goodson hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

141. "Employers are required to provide itemized wage statements to employees, containing specified information, all set forth in section 226(a)." *Heritage Residential Care, Inc. v. Div. of Labor Standards Enf't*, 192 Cal. App. 4th 75, 80 (2011). "The requirement is mandatory." *Id.* Each "detachable part of the check" must accurately itemize nine categories of information. Cal. Lab. Code §226(a). The categories applicable here include: "(1) gross wages earned, (2) total hours worked . . . , (4) all deductions . . . , (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number . . . , (8) the name and address of the legal entity that is the employer . . . , and (9) all applicable hourly rates . . . and the corresponding number of hours worked at each hourly rate." *Id.*

142. Presbyterian willfully failed to provide Ms. Goodson with complete and accurate wage statements as required under Labor Code §226(a). Among other deficiencies, the wage statements did not accurately reflect her gross wages because Presbyterian unlawfully failed to compensate her for her overtime hours worked. This was not an isolated and unintentional payroll error due to a clerical or inadvertent mistake, but a knowing and intentional pattern and practice that occurred throughout Ms. Goodson's employment.

143. As a result of Presbyterian's failures, Ms. Goodson is deemed to have suffered injury. Cal. Lab. Code §226(e)(2)(A), (B). Specifically, Ms. Goodson has been injured because she was denied both her legal right to receive, and her protected interest in receiving, accurate itemized wage statements under Labor Code §226(a). In addition, because Presbyterian failed to provide the accurate hours worked and rates of pay on wage statements, Presbyterian has prevented Ms. Goodson from determining if all hours worked were paid at the appropriate rate and the extent of the underpayment. Ms. Goodson has had to file this lawsuit in order to analyze whether in fact she was paid correctly and the extent of the underpayment, thereby causing Ms. Goodson to incur expenses and lost time. Ms. Goodson would not have had to

HAEGGQUIST & ECK, LLP

31

COMPLAINT FOR DAMAGES AND OTHER RELIEF

HAEGGQUIST & ECK, LLP

engage in these efforts and incur these costs had Presbyterian provided the accurate rate of pay. This has also delayed Ms. Goodson's ability to demand and recover the underpayment of wages from Presbyterian.

144. As a proximate result of the Presbyterian's unlawful acts, Ms. Goodson has suffered and continues to suffer harm and "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code §226(e)(1).

145. Presbyterian's violations of Labor Code §226(a) prevented Ms. Goodson from knowing, understanding, and disputing the wages paid to her, and resulted in an unjustified economic enrichment to Presbyterian. As a result of Presbyterian's knowing and intentional failure to comply with Labor Code §226(a), Ms. Goodson has suffered an injury, the exact amount of damages and/or penalties is all in an amount to be shown according to proof at trial.

146. Ms. Goodson is also entitled to injunctive relief under Labor Code §226(h), compelling to comply with Labor Code §226 and seek the recovery of attorneys' fees and costs incurred in obtaining this injunctive relief.

## PRAYER

WHEREFORE, Ms. Goodson seeks judgment as follows:

A. For compensatory damages, including unpaid wages (past and future), loss of wages and benefits (past and future), and emotional distress damages (past and future) according to proof at trial;

B. For meal and rest period premiums pursuant to California Labor Code §§226.7 and 512;

C. For civil penalties pursuant to California Labor Code §§203 and 226;

D. For attorneys' fees and costs of suit pursuant to California Government

32
COMPLAINT FOR DAMAGES AND OTHER RELIEF

Code §§12945.2(l), 12965(c)(6), California Labor Code §§218, 218.5, 218.6, 29 U.S.C. § 2617(a)(3), and any other applicable provision for attorneys' fees and costs;

      E.    For pre-judgment and post-judgment interest to the extent allowable by law;

      F.    For restitution and injunctive and declaratory relief;

      G.    For punitive and exemplary damages, according to proof; and

      H.    For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Ms. Goodson demands a trial by jury on all claims.

Dated: April 8, 2026

HAEGGQUIST & ECK, LLP
ALREEN HAEGGQUIST (221858)
CLEMENCY CONDRY (805768)

By: _____
      ALREEN HAEGGQUIST

225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorneys for Plaintiff Brandie Goodson

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DAMAGES AND OTHER RELIEF

# EXHIBIT 1

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

April 3, 2026


Clemency Condry
225 Broadway, Suite 2050
San Diego, CA 92101

RE:    **Notice to Complainant's Attorney**
       CRD Matter Number: 202604-34394903
       Right to Sue: Goodson / Presbyterian Healthcare Services

Dear Clemency Condry:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/11)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

# Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

April 3, 2026

RE:    **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202604-34394903
Right to Sue: Goodson / Presbyterian Healthcare Services

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation.  The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/11)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

April 3, 2026

Brandie Goodson
,

RE:   **Notice of Case Closure and Right to Sue**
       CRD Matter Number: 202604-34394903
       Right to Sue: Goodson / Presbyterian Healthcare Services

Dear Brandie Goodson:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective April 3, 2026 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

CRD - ENF 80 RS (Revised 2025/11)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/11)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Brandie Goodson                                    CRD No. 202604-34394903

Complainant,

vs.

Presbyterian Healthcare Services

,

Respondents

_____

**1.** Respondent **Presbyterian Healthcare Services** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **Brandie Goodson**, resides in the City of **,** State of **.**

**3**. Complainant alleges that on or about **April 7, 2025**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was terminated, reprimanded, denied accommodation for a disability.

**Complainant experienced retaliation** because complainant requested or used a disability-related accommodation and as a result was terminated, reprimanded, denied accommodation for a disability.

**Additional Complaint Details:** Ms. Goodson, a Registered Nurse with over 13 years of consistently excellent performance at Presbyterian Healthcare Services, was subjected to disability discrimination and retaliation at the hands of her supervisor after requesting a reduced schedule as a reasonable accommodation for her documented medical conditions stemming from a 2009 motor vehicle accident. Her supervisor denied her accommodation request for a reduced schedule and subjected her to escalating discipline — including her

-1-
*Complaint – CRD No. 202604-34394903*

Date Filed: April 3, 2026

CRD-ENF 80 RS (Revised 2025/11)

first-ever write-up, issued two days after she disclosed upcoming surgeries — before Presbyterian terminated her employment effective April 7, 2025, despite having approved her MLOA through May 15, 2025. Ms. Goodson now brings claims for (1) Disability Discrimination in Violation of California Government Code §12940(a); (2) Failure to Provide Reasonable Accommodation for Disability in Violation of California Government Code §12940(m); (3) Retaliation for Requesting Reasonable Accommodations in Violation of California Government Code §12940(m)(2); (4) Failure to Engage in the Interactive Process in Violation of California Government Code §12940(n); (5) Failure to Prevent Discrimination and Retaliation in Violation of California Government Code §12940(k); (6) Retaliation and Wrongful Termination for Taking Medical Leave in Violation of 29 U.S.C. §2615(a); as well as several wage and hour violations.

-2-

*Complaint – CRD No. 202604-34394903*

Date Filed: April 3, 2026

CRD-ENF 80 RS (Revised 2025/11)

VERIFICATION

I, **Clemency Condry**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The matters alleged are based on information and belief, which I believe to be true.

On April 3, 2026, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**San Diego, CA**

-3-
*Complaint – CRD No. 202604-34394903*

Date Filed: April 3, 2026

CRD-ENF 80 RS (Revised 2025/11)